UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

JONATHAN STEPHENS,

    Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.
_____/

Civil Action No.: 3:16-cv-02476
Honorable Aleta A. Trauger
Magistrate Judge Elizabeth A. Stafford

# REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [ECF NO. 17]

Plaintiff Jonathan Stephens appeals a final decision of Defendant Commissioner of Social Security (Commissioner) denying his applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act (the Act). Plaintiff has filed a motion for judgment on the administrative record, the Commissioner has responded, and the matter has been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that Stephens's motion **[ECF No. 17]** be **DENIED**.

## I. BACKGROUND

### A. Stephens's Background and Disability Applications

Stephens filed his applications for disability benefits in May 2013, and alleged an onset date of April 11, 2013, when he was 40 years old. [Tr. 23, 204-09, 210-14]. He has past relevant work as an industrial maintenance-electrician. [Tr. 23]. Stephens initially alleged disability due to back pain, impinging disks, diabetes, tingling and numbness in legs, severe and chronic pain, and surgeries. [Tr. 228].

After a hearing, ALJ Elizabeth P. Neuhoff issued an unfavorable decision in April 2015. [Tr. 9-29, 30-75]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Stephens timely filed for judicial review. [Tr. 2-7; ECF No. 1].

### B. The ALJ's Application of the Disability Framework

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial

2

gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[2] [*Id.*] Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. [*Id.*] If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. [*Id.*] At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. [*Id.*] The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    Applying this framework, the ALJ concluded that Stephens was not disabled. At the first step, the ALJ found that Stephens had not engaged in

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

substantial gainful activity since his alleged onset date. [Tr. 15]. At the second step, she found that Stephens has the severe impairments of "back disorder status post discectomy on February 12, 2014 and fusion on June 9, 2014 and peripheral neuropathy now resolved with surgery." [*Id.*] Next, the ALJ concluded that none of Stephens's severe impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*]

Between steps three and four, the ALJ found that Stephens had the RFC to perform sedentary work,[3] with the following limitations: "Lifting or carrying of five to ten pounds occasionally; avoiding of repetitive and overhead lifting; sitting without restrictions; standing and walking up to two hours total in an eight-hour workday; and no bending of more than thirty degrees at the waist." [Tr. 15]. At the fourth step, the ALJ found that Stephens could not perform past relevant work. [Tr. 23]. With the assistance of VE testimony, the ALJ determined at step five that, based on

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

Stephens's age, education, work experience and RFC, he could perform the positions of telephone clerk, order clerk, and inspector, for which significant jobs existed in the national economy. [Tr. 24]. As such, the ALJ concluded that Stephens had not been under a disability from April 11, 2013, through the date of her decision. [Tr. 25].

## II.  ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Stephens argues that the ALJ erred by failing to properly analyze the opinion evidence of Stephen Neely, M.D., and by not offering the

necessary "good reasons" for discounting it.  He also contends that the ALJ failed to consider whether he was entitled to a closed period of disability, and that she made an improper credibility finding.  The Court concludes that substantial evidence supports the ALJ's findings in all respects.

**B.**

Stephens first contends that the ALJ erred by failing to give good reasons for discounting the opinion evidence of Dr. Neely.  The Court finds that the ALJ was not required to provide good reasons for discounting Dr. Neely's opinion, and that the ALJ properly gave greater weight to the opinions of Stephens's treating physicians.

Dr. Neely performed an independent medical examination in December 2014, and completed a medical source statement in February 2015.  [Tr. 413-20].  He opined that Stephens's symptoms and/or impairments were severe enough to interfere with attention and concentration required to perform simple work-related tasks "often" to "frequently."  [Tr. 413].  Dr. Neely also believed that Stephens may need to lie down, and/or be absent from a typical work station in excess of typical break times.  [*Id.*]  According to Dr. Neely, Stephens could stand/walk for two hours and sit for two hours in an 8-hour work day; could lift 20 pounds (but not occasionally); could lift 10 pounds occasionally, and less than 10

6

pounds frequently; and could never climb, stoop, kneel, crouch, crawl, or balance. [Tr. 413-14]. In addition, Dr. Neely restricted Stephens from performing work that involved heights and moving machinery. [Tr. 414]. He predicted that Stephens was likely to be absent from work more than four times per month as a result of his symptoms, impairments, or treatment. [*Id.*] Both parties agree that had the ALJ fully credited Dr. Neely's opinion, it would have been work-preclusive. But the ALJ properly discounted Dr. Neely's opinion after comparing it to the treating physician opinions.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. Usually, the treating physician rule is invoked by the Social Security

7

claimant, but the Commissioner is the party invoking the treating physician rule here. The Commissioner correctly asserts that application of the treating physician rule undermines Stephens's argument that the ALJ was required to assign more weight to Dr. Neely's opinion.

In analyzing and weighing the opinion evidence, the ALJ noted that statements from Stephens's treating physicians indicated that he was able to perform work activity, though with some restrictions. [Tr. 22]. Specifically, orthopedic spine surgeon Mitul Patel, M.D. told Stephens in June 2013 that there was a "very high chance" that he may never return to industrial maintenance work even if he underwent fusion surgery, and that he may need to look for a less labor-intensive job. [Tr. 22, 307-08.] In December 2013, neurosurgeon George Lien, M.D., agreed to schedule Stephens for surgery and placed him on modified work duty with limitations of lifting no greater than 20 pounds and no bending at the waist of greater than 30 degrees. [Tr. 22, 353-54].

A September 2014 post-operative exam showed that Stephens was walking one mile a day, had good pain relief, could stop wearing his brace, and was doing quite well. [Tr. 372]. Dr. Lien thus reaffirmed his opinion that Stephens could return to restricted work duty that involved lifting 10 pounds and no bending more than 30 degrees. [Tr. 372-73].

8

Case 3:16-cv-02476    Document 20    Filed 02/28/18    Page 8 of 16 PageID #: 515

The ALJ also considered Dr. Johnson's August 2013 consultative assessment that Stephens could lift five to ten pounds occasionally, stand and walk for at least one to two hours in an eight-hour workday, sit without restrictions, and that he should avoid repetitive and overhead lifting. [Tr. 22, 311-313]. The ALJ found that Dr. Johnson's lifting restriction was consistent with Dr. Lien's assessment, and that both Dr. Johnson's and Dr. Lien's opinions accounted for any residual limitations following Stephens's surgeries. [Tr. 22]. And while Dr. Johnson said that Stephens was able to stand or walk for "at least" one or two hours, the ALJ assessed an RFC limiting Stephens to "no more" than two hours of standing and walking in a workday to account for his subjective complaints of neuropathy in his feet and numbness in his left leg. [Tr. 15, 22, 313].

The ALJ also gave "some weight" to Dr. Neely's independent medical examination assessment regarding lifting and carrying restrictions, concluding that they were consistent with the opinions of Drs. Johnson and Lien. [Tr. 23, 415-20]. But the ALJ gave Dr. Neely's sitting, standing/walking, and postural limitations "no weight" because they conflicted with the opinions from Drs. Johnson, Lien and Patel. [Tr. 23]. The ALJ's decision to give greater weight to the opinions of Stephens's treating physicians is consistent with the treating physician rule.

9

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2); *see also Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (same).

While Stephens asserts that the ALJ was required to give "good reasons" for not adopting Dr. Neely's opinion, the Section 1527(d)(2) "good reasons" requirement applies only to the opinions of treating physicians. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2017). Because Dr. Neely was not a treating physician, the ALJ was required to consider the consistency of his opinion with the record as a whole. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013). That is precisely what the ALJ did when finding that portions of Dr. Neely's opinion were inconsistent with the opinions of Stephens's treating physician. Stephens argues that Dr. Neely's opinion deserved the most weight because it was rendered after his last surgical recovery period, but the regulations place more weight on the longitudinal picture and unique

10

perspective of treating physician opinions. § 1527(d)(2); *Johnson,* 652 F.3d at 651.

For all of these reasons, the Court finds no error in the ALJ's decision to limit the weight given to Dr. Neely's opinion.

**C.**

Stephens argues that the ALJ failed to consider whether he was disabled for a closed period. To sustain this argument, he must show that he was unable to work for a continuing 12 month period. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). As described above, the ALJ properly relied on the opinions of Stephens's treating physicians that he could perform limited work during the time period in question, refuting his claim that the ALJ erred by failing to find that he was disabled for a 12 month period.

Stephens does not rely upon a medical opinion indicating that he was disabled for closed period. Instead, he essentially invites the Court to reweigh the evidence to determine whether he should have been found disabled for a 12 month period. [ECF No. 18, PageID 481-84]. Such a reweighing of the evidence is not permissible. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the

11

Commissioner merely because substantial evidence exists in the record to support a different conclusion.").

**D.**

Finally, Stephens contends that the ALJ made an improper credibility determination. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Stephens's credibility argument relies exclusively on the ALJ's alleged failure to consider his exemplary work history and his previous return to work following surgeries. [ECF No. 18, PageID 484-88]. But the Sixth Circuit has specifically held that an ALJ is not required to explicitly discuss a claimant's work history when making a credibility determination. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss Dutkiewicz's work history when assessing his credibility, and the ALJ's determination that Dutkiewicz's testimony was not fully credible is supported by substantial evidence because Dutkiewicz's claim that he suffered from severe pain and had disabling functional limitations was at odds with the medical and work-

12

history evidence in the record, as considered by the ALJ.").

Notably, Stephens does not address the ALJ's reasoning for finding that his claims were not fully credible. In assessing Stephens's credibility, the ALJ found that the objective medical evidence and clinical examination findings did not corroborate his alleged symptoms and limitations. [Tr. 21]. She acknowledged that imaging studies showed that Stephens has recurrent disc herniations, and that examinations have demonstrated positive straight leg raises, decreased neck and back range of motion, some diminished sensation in the left lower extremity, and a slightly decreased bilateral grip strength. [*Id.*] But she also found that Stephens consistently demonstrated normal strength, and that there was no evidence that he has required the use of any ambulatory assistive devices. [*Id.*]

The ALJ wrote that Stephens's right leg symptoms improved following his February 2014 back surgery, and that he had near complete resolution of his left leg pain following his June 2014 back surgery. [*Id.*] She said that he reported some numbness in his left leg, but had otherwise denied constant numbness or weakness in his lower extremities. [*Id.*] And the ALJ recounted that, at his last documented visit with Dr. Lien in September 2014, Stephens had negative straight leg raises and normal motor strength, sensation, and reflexes. [*Id.*]. The ALJ noted that Stephens was

13

discharged from physical therapy after his therapist reported good post-operative progress. [*Id.*].

While Stephens testified that he cannot work because of his need to lie down frequently during the day and his inability to sit for long period of time, the ALJ pointed out that his treating physicians did not conclude that he had any sitting limitations, or need to lie down. [Tr. 21]. And the ALJ reasoned that, despite Stephens's testimony that he could not be trained to perform any new jobs, the vocational expert identified available jobs consistent with his RFC. [Tr. 24, 53].

Stephens did not challenge any of the factual bases for the ALJ's reasoning, or argue that the ALJ relied upon legally impermissible factors. He has failed to provide a compelling reason to disturb the ALJ's credibility determination.

### III. CONCLUSION

For the above stated reasons, the Court **RECOMMENDS** that Stephens's motion for judgment on the administrative record **[ECF No. 17]** be **DENIED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: February 28, 2018

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

# **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.